SHERED *v.* SHERED.

1. DIVORCE—DESERTION—EVIDENCE.

Evidence that complainant's wife deserted him after being married about a year, that he was 74 and she was 49 years of age, that she commenced about five months after the marriage to urge him to convey certain property to her, and left him without cause when he refused to comply with her request, although defendant charged him with unnatural conduct and annoying habits, the testimony as to these matters of defense being disputed, justified the court in granting complainant a divorce on the ground of desertion.

2. SAME—DOWER—AWARD IN LIEU OF DOWER.

Under Act No. 259, Pub. Acts 1909, a provision of $400 in lieu of dower should have been granted to the wife out of property worth about $10,000.

Appeal from Van Buren; Des Voignes, J. Submitted June 11, 1912. (Docket No. 70.) Decided October 2, 1912.

Bill by John B. Shered against Evelyn Shered for divorce. From a decree for complainant, defendant appeals. Modified and affirmed.

*W. J. Barnard,* for complainant.

*Charles H. Fisher* and *Glenn E. Warner,* for defendant.

STEERE, J. In this suit defendant has appealed from a decree of divorce granted to complainant by the circuit court in chancery of Van Buren county on the ground of desertion, with an allowance to defendant of $250 permanent alimony and $95 for solicitor's fees and costs. After a short acquaintance, the parties were married on December 6, 1905, at which time complainant was approximately 74 years of age and defendant 49. Each had been previously married. He was a widower and she a divorcee.

He had lived with his first wife 48 years, was a farmer by vocation, living in Waverly township in said county, where he owned a farm of 86 acres and some other property which, with the aid of his former wife and son, a man now near 50 years of age, he had acquired during years of effort and industry. His total accumulations were found by the court to be approximately $6,000. Defendant had obtained a divorce from her former husband some years previous to her marriage to complainant, in Elgin, Ill., where she lived most of her life. She had one child, a married daughter, living in Illinois. Subsequent to her divorce from her former husband, defendant had, being without means, earned her living as a domestic, also by caring for the sick and working in a watch factory in Elgin, Ill. After they were married, defendant lived with complainant at his home on a farm in Evelyn township for less than a year, voluntarily leaving him November 17, 1906, since which time she has not returned, having gone back to her former home in Elgin, Ill., where she was living at the time this suit was begun and also when it was heard in the trial court. That she left on her own initiative is undisputed. The cause of her leaving is in controversy.

On February 1, 1910, complainant filed this bill, alleging statutory desertion for more than two years. She being a nonresident, substituted service was had by publication. No appearance was entered, the bill was taken as confessed, and decree was granted June 13, 1910, after hearing the testimony of complainant and his witnesses in open court. On September 30, 1910, defendant, having secured counsel, petitioned the court to set aside the decree and allow her to answer, alleging various reasons, amongst others that she never deserted complainant, that she had no notice or knowledge of the suit until after decree, and that the cause was not regularly put upon the printed calendar for the term at which it was heard, as required by a rule of the court. The court, after hearing counsel for the respective parties in relation thereto, set

aside the decree on the last ground stated, opened the default, and permitted defendant to file an answer. To this a replication was duly made and filed, and the suit regularly heard on pleadings and proofs, taken in open court, after which the decree here appealed from was rendered. Defendant denies that her leaving complainant was a legal desertion, but alleges that she was obliged to absent herself owing to his actions, consisting of annoying and filthy habits, and vile, degrading, and unnatural conduct towards her, amounting to cruel and inhuman treatment. No affirmative relief is asked. She prays that the bill be dismissed, with costs.

All charges of misconduct, as set out in her answer, and testified to by her, are positively and emphatically denied by complainant, who claims that he provided well for her and treated her kindly while she lived with him, but she became dissatisfied and left against his protest, and for the reason that he refused to transfer his property to her. He testified that, after they had been married about five months, she began to importune him to deed his property to her, and, on his refusal, she became angry, threatened to leave if he did not do so, and finally left on account of his continued refusal to comply with her demand. He testifies:

"One night she said: 'I'll give you just a week now to fix this property.' 'Well,' I says, 'now, Evelyn, I want you to let me alone. You can give me a lifetime and then I won't.' * * * The last time she gave me until next Wednesday to deed the property over to her, or she would have her brother come after her."

On this subject defendant testifies:

"I never asked Mr. Shered to give me his property. I simply asked him to take his property in his own name that I might hold a wife's rights. I did not know I had his wife's rights in his personal property. I never asked him to take his property in his own name but a few times."

On the subject of certain revolting charges set out in

defendant's answer, the learned circuit judge, who saw and heard the witnesses, says:

"Nothing has been shown in his acts or conduct that rise to the dignity of cruelty. Defendant does accuse him of a serious offense, one which shocks the sense of decency, and, if sufficiently shown, ought to make him an outlaw and unfit to enter the homes of his friends and neighbors, and an outcast to society. But she alone is his accuser. All of his neighbors and friends, neighbors and friends who knew him well and personally for a generation, testify to his good reputation, his continued life of good conduct and moral rectitude. * * * It does not appear that the defendant, though living with him as his wife for nearly eleven months, made any complaint of his alleged acts of cruelty even to her relatives or close friends, and not until the filing of her answer do we hear of it. I am unwilling, under the evidence and what I observed of the witnesses while on the stand, to place this stigma upon complainant as he nears the close of what was to other observers an industrious and well-conducted life. Her claim of wrongful conduct stands uncorroborated."

After an examination of the testimony as a whole, we are not disposed to disagree with the conclusions reached on that subject by the trial court. The testimony is overwhelming that, in the community where he had lived for a lifetime, complainant was known and respected as a man of moral rectitude, honest, peaceable, and law-abiding, kindly disposed to all, of good reputation, and exemplary character. It is testified that he was never cross or ugly around the house when living with his first wife or with defendant; that he did not use tobacco, intoxicating liquor, or profane language, was religiously inclined, and given to reading his Bible and singing hymns; in fact, his loud indulgence in the latter devotional exercise at inopportune times, during the still watches of the night, disturbing her slumbers, was one of defendant's grievances. He also mildly complains that her criticisms of his habits tended to ruffle his religious serenity at times. In denying a vulgar impropriety, of which she accused him, he testified:

172 MICH.—15.

" 'Now,' I says, 'Evelyn, I didn't do any such thing.' She says, 'You did.' I says, 'I didn't,' and she would close by saying, 'You are nothing but a good-for-nothing, low, dirty, rotten pup.' That was the closing speech that time, and she wrought me up so I couldn't ask the blessing at the table."

It is manifest that defendant, having hastily married an old man drifting into his dotage, with certain fixed habits of a lifetime which were not altogether in conformity with the usages and amenities of polite society, found life on a farm, in his companionship, with its weary round of uneventful toil, dull, uncongenial, and distasteful. She disliked farm life, was dissatisfied, complained of the barnyard smell which hovered around complainant, importuned him for his property, wanted him to sell it and go into some business in town, and finally, after an unsatisfactory trial of less than a year, abandoned him and the home he provided, leaving against his protest and of her own choice. We think the statutory desertion alleged is established by a preponderance of testimony, and, by such desertion, she has deprived herself of rights which would otherwise obtain.

She contributed nothing to the property of complainant at the time of her marriage or after. His earning powers are near an end, if not ended. His accumulations of a long life are not large, and his home, established in a new house built for them, where he planned to live with her the few remaining years of his life, has been broken up by her desertion. That this was a marriage of convenience, and in the nature of a business venture on the part of defendant, is indicated. In that aspect of the case she has failed to fulfill her part of the contract, and has sought, in defense, to blacken the character of complainant by vicious charges which have not been found substantiated. While defendant is not, for these reasons, entitled to the consideration of one who is blameless, yet some provision seems permissible and proper, under all the circumstances of the case, in view of Act No. 259, Pub.

Acts 1909, which makes it the duty of the court to include in a decree some provision in lieu of dower, which is to be in full satisfaction of all claims the wife may have in any property the husband owns or may thereafter own or in which he may have an interest.   Recognizing this, the trial court awarded $250 on the basis of $6,000, found to be defendant's worth at the time of the hearing.   In his sworn answer to the petition for a rehearing, complainant "admits that he was the owner of property in the neighborhood of the value of $10,000 at the time he procured said decree of divorce."   In view of this, we think it proper to increase the allowance to $400, with costs for printing the record in this court.

With such modification, the decree is affirmed.

MOORE, C. J., and MCALVAY, BROOKE, STONE OSTRANDER, and BIRD, JJ., concurred.